Scott, J.
The assignment of errors in this case relates, ■mainly to the admission of improper evidence, upon the trial in the court below. It is claimed that the court erred:
1. In admitting in evidence the counterfeit bills, numbered respectively 1750 and 1758, while the only bill specially .set out in the indictment, is described therein as being bered “175.” num-
*61 2. In admitting evidence of the searching of Robb, and of the counterfeit money found in his possession. And,
3. In admitting the rebutting testimony of the witnesses-from G-arrettsville, in relation to defendant’s character at that place.
We shall briefly consider each of these points.
1 It is well settled, that in an indictment for forgery, or where,as in this case, the forged or counterfeit character of an instrument is an essential ingredient in the crime charged, the-instrument alleged to be forged, must be specifically described. McMillen v. The State, 5 Ohio Rep. 269; Dana v. The State, 2 Ohio St. Rep. 91; Wharton’s Am. Crim. Law, 587; 3 Chit. Crim. Law, 1040. Accordingly, the indictment in this case,, alleges that one of the counterfeit bank notes unlawfully sold by the defendant “was of the tenor and effect following, to-wit.” The word “tenor” imports an exact copy. It was-necessary therefore that the indictment should set forth truly and precisely all the words and figures of the bill which constitute its contract. It was not necessary to the validity of the indictment to go further and set out the number of the bill, its vignettes, mottoes, and devices, or the words and. figures in its margin which constitute no part of the contract of the forged instrument. These are not properly any part' of the bill. Commonwealth v. Bailey, 1 Mass. 62 ; Commonwealth v. Stevens, Id. 204 ; People v. Franklin, 3 Johns. Cas. 298; Commonwealth v. Searle, 2 Binney, 332; State v. Carr, 5 N. Hamp. 367; Wharton’s Am. Crim. Law, 588,174.
But it does not follow that descriptive averments unnecessarily inserted in an indictment may be rejected as surplusage. On the contrary, no allegation descriptive of the identity of that which is legally essential to the charge can ever be rejected. Thus, “ if a man be charged with stealing a black horse, the allegation of color, although unnecessary, yet being descriptive-of that which is material, could not be rejected; to admit evidence that he stole a white one, would not be to prove a part' of that alleged, but to prove an offense in respect of a subject matter proved to be different.” 3 Stark. Ev. 1531; Arch-bold’s Or. PI. 108; 2 Russell on Crimes, 788; Moore v. The *62 State, 12 Ohio St. Rep. 887. The indictment in this case, in its specific description of one of the bills alleged to have been sold by the defendant, represents it as numbered “ 175 ” in two places upon its face. It is not easy to see how this can be held to be other than an averment descriptive of identity. Two bank bills may be substantially similar, but if they are •differently numbered, they are thus distinguishable from each other, and a charge of selling the one, is not supported by proof of a sale of the other. In the case of the State v. Noble, 15 Maine Rep. 476, the defendant was indicted for the fraudulent taking and conversion of a pine log marked in a manner particularly described; the proof upon the trial had reference to a pine log marked in a different manner, and it was held that no conviction could be had, though the special description of the log was unnecessary.
In the case before us, the descriptive number “175” stated in the indictment is entirely different from the numbers 1750 and 1758 upon the bills admitted in evidence. Though the figures stated in the indictment are all to be found in the numbers upon the bills offered in evidence, yet they are found in connection with another figure, by which the numerical value of each of these is wholly changed. ' This variance, in matter of description, should, we think, have excluded the bills offered in evidence.
2. We perceive no satisfactory ground upon which the competency of the evidence, relating to the searching of Robb, and the counterfeit bills found upon him, can be placed. Had the bills been found upon the defendant himself when arrested, •evidence of that fact would have been competent only for the purpose of proving his guilty knowledge of the counterfeit character of the bills which he had sold. But they were found upon another, fifty days after the alleged commission of the ■ crime with which the defendant stood charged; and during all that time, no intercourse or association is shown to have taken place between the defendant and Robb. After such a lapse of time, the defendant could not properly be held responsible for the acts of Robb, even though they may have *63 been partieeps criminis in the transactions which had taken place fifty days before that time.
3. Upon the trial of a criminal cause the prosecution can •not offer evidence to impeach the general character of the defendant, till he has put it in issue by calling witnesses to prove his good general character. Com. v. Hardy, 2 Mass. R. 317. The question at issue in such a case is the general character of the party. This general character is the reputation Avhich he bears, or the estimation in which he is held in the community where he has lived. And though it may be co-extensive with his acquaintance, yet it can not, in any case, consist of a local reputatiou confined to a neighborhood remote from the party’s residence, and among a community not having the means of forming, from personal acquaintance, an intelligent judgment on the subject. The general character which is the proper subject of inquiry should also have reference to the nature of the charge against the defendant! Thus, in the present case, the defendant being charged with a crime necessarily importing dishonesty, called witnesses who gave evidence tending to show a general good character for honesty. To rebut this evidence, the state was permitted, after proving that the defendant had been seen in Garrettsville, twenty-six miles distant from his residence, to show that the defendant had a bad reputation, at that place, on the subject of counterfeiting, that report said he had been concerned in passing counterfeit money, and that it was said his brother, who lived near that place, had been the innocent instrument, and defendant had caused him to pass it. This evidence was clearly incompetent; it did not tend to show the general character of the defendant among his neighbors and acquaintances, but to prove a report limited to a community, Avhere the defendant had never lived, and was not shown to be generally acquainted. It was also objectionable as a mere report in relation to particular facts, and not to general character.
For these several errors the judgment of the court of common pleas will be reversed.
Peck, 0 J., and Gholson, Brinkerhoee, and Ranney, JJ., concurred.